IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



FILED
FEB 23 2007
CLERK'S OFFICE
DETROIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PETER ERIC HENDRICKSON and<br>DOREEN M. HENDRICKSON,<br>Defendants. | Case No. 2:06-CV-11753<br>Judge Nancy G. Edmunds |

**DEFENDANTS' RESPONSE TO THE MAGISTRATE'S "REPORT AND RECOMMENDATION" REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**BACKGROUND**

On April 12, 2006, Plaintiff commenced an action against Defendants for the purpose of suggesting to the already large and rapidly growing host of Americans who have read Defendant Peter Hendrickson's book, '<u>Cracking the Code- The Fascinating Truth About Taxation In America</u>', that if those readers act on the obviously accurate information about the law contained in the book by knowledgably filing honest and proper tax return instruments (the consequence of which is, in most cases, to foreclose any claim by the Plaintiff to the filer's property), these Americans might themselves be targeted by a similar abusive and burdensome "lawsuit". It is the Plaintiff's preference that these Americans should perjure themselves on any tax forms filed or stand silent in the face of the testimony of others about their receipts-- thus foregoing the opportunity provided by law and the most basic principles of due process to assert a claim to their

own withheld or paid-in property in relevant cases, and effectively endorsing a competing claim against themselves and their property by the Plaintiff.

Defendants, pursuant to the Federal Rules of Civil Procedure, promptly and properly moved this Honorable Court to dismiss the action on various grounds, including jurisdictional grounds. Among much else, Defendants pointed out that Plaintiff's prayer that the Court command the Defendants to change their sworn testimony on the tax returns they executed in connection with the years 2002 and 2003, is a remedy not available to the Court. Plaintiff had doubtless included this prayer as a fundamental element of the remedy it sought in an unconscious acknowledgement of the fact that by law it can only assess and collect amounts shown as tax on a return. The fact that coerced testimony on a return would be invalid, and thus ineffective to this corrupt purpose, had escaped Plaintiff in its haste to announce its "lawsuit" before "tax day".

Because a court unable to offer a remedy sought is automatically without jurisdiction, Defendants' response to the "coerced testimony" prayer in Plaintiff's hastily contrived mummery of a suit was fully dispositive of this "lawsuit" by itself. It is also impossible for the Plaintiff to defend. However, rather than abandon its corrupt purpose after belatedly recognizing the tangled weave being generated by its efforts to deceive, Plaintiff decided instead to attempt to "game the system". On July 13, 2006, Plaintiff submitted to the Court a Motion for Summary Judgment-- purporting to concern the "lawsuit" it had commenced against the Defendants, but in which Plaintiff abandoned its prayer for retroactive witness-tampering. In so doing, Plaintiff is seeking to effectively get a "bite at the apple" to which it is not entitled, in the sense of filing yet another brief in the action beyond the initial "complaint" and the single response to our motions to

which it is entitled under the rules of civil procedure; to bypass the Court's ruling on our motions, which would preclude any opportunity for a motion for summary judgment of any character or content; and to dismiss its own complaint and re-file another, while dodging the various inconveniences of admitting (or having it made clear) that its initial complaint was a complete contrivance hastily filed in the grossest of bad faith for the corrupt purpose of intimidating the American public five days before the deadline for tax filings in 2006.

## RESPONSE

## DEFENDANTS GENERALLY AND COMPREHENSIVELY OBJECT TO THE MAGISTRATE'S RECOMMENDATIONS

We are instructed in the Magistrate's filing that this response is our opportunity to object individually and specifically to each aspect *of his recommendation*, or forfeit future opportunities to do so. We take this as written, and presume that our response here does not compromise or affect in any way our opportunities to object to, or appeal, the actual district court ruling on our motions when they are issued. We WILL nonetheless endeavor to respond to the magistrate's recommendations individually and specifically here as best we are able, but, given the constraints of permitted response length, the fact that the Magistrate has blended numerous disparate elements into certain subdivisions of his recommendations in a highly confusing manner, and the fact that unlike the Plaintiff in this action, we do not have a staff of attorneys paid with other people's money to write instruments like this one full time, we will also state for the record that we broadly and comprehensively object to each and every conclusion reached

and recommendation made by the Magistrate, and, insofar as is possible under whatever doctrine or rules govern responses of this kind, incorporate into this response by reference each and every point, argument and piece of evidence included or referenced in all of our filings already on record with the court in connection with this action thus far.

Further, we object generally to any consideration of Plaintiff's "Motion for Summary Judgment". It is our understanding that until jurisdictional challenges have been settled, such motions are untimely, even when not made in bad faith. As the United States Supreme Court has observed, unambiguously and repeatedly:

> "[Jurisdiction] *must be considered and decided, before any court can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction."*
> State of Rhode Island v. Com. of Massachusetts, 37 U.S. 657 (1838)

In addition to other jurisdictional issues raised in our motions, nothing presented by Plaintiff but the testimony of Kim Halbrook even purports to establish that this case concerns the income tax laws, or that Plaintiff has any claim to pursue at all, and Halbrook's testimony is explicitly controverted both throughout Defendants' motions, briefs, responses and affidavits of all varieties previously introduced into the record of this case and by the additional affidavit attached to this response as well; in any event, our jurisdictional challenges have yet to be ruled upon by the Court.

Thus, we do not intend this response, nor that filed in September of 2006 to Plaintiff's filed motion, to be taken as endorsing or acknowledging the legitimacy, propriety or timeliness of the motion, although we do affirm and intend the introduction as evidence of the affidavits submitted directly and by reference with that earlier response, and the affidavit by Defendant Peter Hendrickson attached to this response, into the record of this case.

## SPECIFIC OBJECTIONS TO THE MAGISTRATE'S RECOMMENDATIONS

### A.

Magistrate Whalen begins to misconstrue early in his "Report and Recommendation". Within the "Facts and Procedural Background" section of his report, the Magistrate says:

> "*Defendants attached a form 4852 ("substitute for Form W-2 Wage and Tax Statement") reporting that he had received no wages for 2002, but apparently citing Defendant Peter Hendrickson's W-2 form, which stated that $5,642.20 had been withheld in income taxes; $3,655.83 in social security taxes, and $854.93 in Medicare taxes. Id. at Exhibit 1, Attachment 1; Exhibit 2, Attachment 1. Defendant Peter Hendrickson included the following explanation for his failure to produce a form W-2:*
>> "*Request, but the company refuses to issue forms correctly listing payments of 'wages as defined in 3401(a) and 3121(a)' for fear of IRS retaliation. The amounts listed as withheld on the W-2 it submitted are correct, however.*"

Since the words written on the Form 4852 by Defendant Peter Hendrickson, which Magistrate Whalen quotes, explicitly refer to "the W-2" submitted, there is no possibility that the Magistrate means that reference when he says "apparently citing...". It is therefore obvious that the Magistrate means to imply that Defendant Peter Hendrickson RELIED upon the Form W-2 in determining amounts withheld in his use of that language. Presumably this misconstruction is intended to suggest that the W-2 is being declared true on the one hand and false on the other, as suits the Defendant's purposes, and that therefore the Defendant's testimony that certain declarations made on the form are incorrect should be viewed with suspicion, at least. Indeed, in a footnote on Page 7 of Magistrate Whalen's report, he says as much more-or-less explicitly.

However, even if the magistrate's preferred misconstruction were sound, it would be the equivalent of attempting to impeach the testimony of a man who loses his wallet

and who, when it is found and returned to him, disagrees with the fellow who returned it as to how much money had been inside, despite both of them agreeing about where and when the wallet was lost. Further, and in any event, the actual content of the Defendant's words on the W-2 is directly contrary to Magistrate Whalen's misconstruction. To declare that "The amounts listed as withheld on the form W-2 it submitted are correct..." is to declare that those amounts have been INDEPENDENTLY verified as accurate. Indeed, this language can have no other meaning.

Magistrate Whalen goes on in a similar vein, incorporating misleading language over and over again throughout his report, effectively and, in our view, improperly adopting as established matters merely alleged by Plaintiff, and explicitly disputed by Defendants in their briefs, motions, responses and affidavits filed in this case. He refers, for instance, to Personnel Management, Inc. as Defendant Peter Hendrickson's "employer". Within the context of the instant action, "employer" has an explicit legal meaning, and the legitimacy of applying the term to Personnel Management, Inc. is among the substantive elements of this case and has considerable relevance to other substantive elements thereof. Under the Federal Rules of Civil Procedure, in the case of a motion for summary judgment all such matters must be viewed in a light most favorable to the non-moving party. Consequently, Personnel Management, Inc. must be viewed as NOT being Defendant Peter Hendrickson's "employer" in considering this motion. Similarly, Defendant Peter Hendrickson must be viewed as NOT being an "employee" and his earnings must be viewed as NOT being "wages".

Magistrate Whalen also explicitly misrepresents our testimony and arguments. On page 7 of his report, for instance, he declares that we acknowledged *"that these*

*amounts* [portions of the property we reclaimed] *were either applied to earlier tax liabilities...".* We did no such thing, but on the contrary, explicitly testified in the affidavit included in support of our motions to dismiss and for other relief that:

> *"We deny the allegations in the government's complaint, particularly in paragraphs 10, 12, 19, 20 and 23, to the effect that lawfully-determined liabilities existed against us for the years 2000 and 2001 to which portions of what we claimed as "overpayments" for 2002 and 2003 were diverted."*

Magistrate Whalen goes on to discuss the assertions of Shauna Henline and "Terry Grant the Mystery Bureaucrat", but these assertions are meaningless. The contentions of both "Grant" and Henline are mere idle speculations, and utterly irrelevant, in the face of any challenge to the assertions of Kim Halbrook. Only if "wages" as defined in the relevant law have been paid do the ruminations of "Grant" and Henline about the proper care and feeding of taxes which only arise from, and are measured by, the payment of such "wages" become relevant. Plaintiff has by no means established that such "wages" were paid. The only "evidence" Plaintiff proffers in this regard is the testimony of Kim Halbrook, and that testimony has been explicitly rebutted by sworn testimony on our 1040s and related instruments, as well as our filings and other affidavits introduced into the record of these proceedings so far. Furthermore, as we have observed in previous filings in this case, Kim Halbrook actually has no relevant personal knowledge about payments made to Defendant Peter Hendrickson, an observation which we now more explicitly introduce into the record of these proceedings by means of the affidavit attached to this response.

The sum of all this is that Plaintiff cannot prevail based on the evidence, and beyond, and additional to, that simple fact is that Plaintiff cannot prevail due to the

operation of law, either. The law explicitly provides that a sworn tax return serves as a dispositive answer to the contentions made on "information returns" such as W-2s and 1099s:

> *Section 93 of The Revenue Act of 1862*
> *"Sec. 93. And be it further enacted,...that any party, in his or her own behalf,...shall be permitted to declare, under oath or affirmation, the form and manner of which shall be prescribed by the Commissioner of Internal Revenue,...*
> *...the amount of his or her annual income,... liable to be assessed,... and the same so declared shall be received as the sum upon which duties are to be assessed and collected."*

That the process specified in this statute remains intact and in force is illustrated by the following IRC and CFR sections:

> *26 USC § 6201*
> *(a) Authority of Secretary*
> *The Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law, which have not been duly paid by stamp at the time and in the manner provided by law. Such authority shall extend to and include the following:*
> > *(1) Taxes shown on return*
> > *The Secretary shall assess all taxes determined by the taxpayer or by the Secretary as to which returns or lists are made under this title.*
>
> *6 CFR 301.6203-1 Method of assessment.*
> *...The amount of the assessment shall, in the case of a tax shown on a return by the taxpayer, be the amount so shown...*

Further, there is, of course, no provision of law whatsoever for the "information return" preparer to weigh in again, in response to, or dispute of, the return filed pursuant to the legislation noted above. Were there to be such a provision, it would obviously be in direct conflict with that legislation. Plaintiff has no such authority, either. While Plaintiff may be provided a limited authority to subsequently raise issues as to the

accuracy with which the proper rate of tax was applied to the amount of income reported on such a return, or as the propriety of deductions which may have been taken, there is no provision under which Plaintiff may dispute or take issue with the declaration on the return as to the amount of income received. This is a simple matter of rational necessity. As in the case of the "information return" preparer, were such a provision to be proposed, it would clearly conflict with those noted above. Besides, even if this were not so, other than in the few instances in which Plaintiff is itself the "information return" preparer, it is possessed of no personal knowledge of the matters involved whatsoever, and thus would lack standing to relevantly testify, or even merely aver, in any event.

### B.

Magistrate Whalen proceeds to hold forth with regard to Plaintiff's modified prayer that this Honorable Court dictate the sworn testimony on tax returns Defendants may have occasion to execute in the future. As noted in our "Background" summary above, Plaintiff has attempted to abandon its initial prayer that the Court dictate what we are to swear to on our tax returns retroactively, but persisted in its corrupt and, frankly, incomprehensible request for the same legally self-defeating (and thus, unavailable) "relief" in the "motion for summary judgment" at issue here. Little more need be said about this-- to state the proposition is to answer it.

We will, for the sake of thoroughness, observe that the Magistrate appears to adopt without question Plaintiff's fraudulent (that is, deliberately wrong and misleading) characterization of the knowledge and understanding reflected in the testimony on our

returns, even going so far as to quote Plaintiff's mischaracterization as though its assertions stand as established fact, but this is immaterial to the fundamental issue here.

We will also observe that Magistrate Whalen repeats by implication the ridiculous lie presented by Plaintiff to the effect that Plaintiff's return of our property was done as a result of subterfuge. This lie is used by both Plaintiff and the Magistrate as a pretext for arguing that unless Defendants are enjoined, Plaintiff will surely be "fooled" again (or be put to extraordinary expense and trouble to avoid being "fooled"). As we pointed out in our direct response to Plaintiff's motion,

> *"Finally, the "contest" regarding the virtues and significance of Halbrook's assertions has already taken place, and the Plaintiff's argument lost. The Plaintiff strains mightily to suggest to this honorable Court that the government was induced to issue the refunds of Defendants' property that Plaintiff wishes to have back by being misled, due to the Treasury Department and IRS's well-known Pollyanna-like demeanor, and practice of relying without question on the presentations of persons like us on our tax returns. Not only is this a proposition best suited for Jay Leno's evening comedy routine, but it is an outright lie to this honorable Court.*
>
> *Even Kim Halbrook's declaration reports that the records at Personnel Management indicate that its side of the story was duly transmitted to the IRS in a timely fashion, meaning that the return of Defendant Peter Hendrickson's deposited property took place after proper consideration of what the Plaintiff would have us all imagine Halbrook's declaration asserts. For that matter, Defendant Peter Hendrickson's sworn Form 4852s, submitted as part of Defendants' returns for each year, explicitly point out to the government that Personnel Management had issued W-2s not in agreement with the testimony on those form 4852s. The documents prepared by Defendant Doreen Hendrickson rebutting the 1099s created by Una Dworkin do the same with regard to those 1099s. Furthermore, the refunds issued as a result of Defendants' proper and lawful claims did not spring forth upon the receipt by the IRS of Defendants' tax returns. Months went by between the two events-- months during which the IRS repeatedly corresponded with Defendants on the subject of these refunds, including an initial refusal to issue the refund for 2002 without further information.*
>
> *In short, the government had all the evidence, processed all the evidence, applied and obeyed the law, and issued refunds accordingly. The bad faith reflected in Plaintiff's effort to suggest otherwise is mind-boggling, and stomach-turning."*

The Magistrate continues echoing the Plaintiff in suggesting that a failure to enjoin the Defendants risks "encouraging" other Americans to also file tax returns which accurately and honestly express their freely made testimony as to what is true correct and complete to the best of their own knowledge and belief, as opposed to mindlessly (and thus, perjuriously) adopting the testimony of others. In doing so, Magistrate Whalen lays bare, for any honest eye to see, the true purpose of Plaintiff's "lawsuit". Plaintiff has no lawful interest in Defendants' property and never did, as has been made clear by its complete failure to prove any such interest. But that's never really been the reason this "lawsuit" was commenced. What motivates this "lawsuit" is nothing but Plaintiff's profoundly corrupt and indefensible desire to discourage and suppress honest tax returns by filers who have actually read the law for themselves.

Finally, we will observe, mostly for forensic reasons, that the Magistrate's recommendation that Plaintiff's prayer for retroactive coercion be denied as moot is itself "moot", since Plaintiff has already dropped that prayer in the motion being addressed (see the proposed "Permanent Injunction" submitted with Plaintiff's "Motion for Summary Judgment".

## CONCLUSION

This issues before the Court are issues of evidence, and of the law. Plaintiff has introduced no evidence whatsoever to support its phony contentions. Plaintiff's sole pretense in this regard is the testimony of Kim Halbrook. However, the assertions of Kim Halbrook are nothing more than attestations of having seen paperwork purporting to reflect the assertions of others as to the legal character of Peter Hendrickson's activities.

She testifies that W-2s saying this and that were mailed to Plaintiff and to Defendants, but has no personal knowledge of the accuracy of "this and that". Her testimony is thus hearsay at best. Even were this not the case, Halbrook's testimony would not serve Plaintiff's needs. The "this and that" asserted on the W-2s involved has been explicitly and formally rebutted by Defendant Peter Hendrickson, whose personal knowledge of "this and that" is unquestionable, and whose testimony on the subject is given primacy by plain and explicit operation of law.

The rest of what Plaintiff presents is entirely dependent on Halbrook's inadequate assertions, and is presented only to generate an illusion of substance, in which each part of the construct is alleged to be the foundation of each other part, with none of it actually resting on the ground anywhere. If Plaintiff were to offer the testimony of a witness claiming the moon was made of cheese (or, to model Halbrook's testimony more closely, claiming to have seen a report that the moon was made of cheese), and were to then supplement that testimony with affidavits from cheese experts as to just what kind of cheese it must be based on the moon's appearance or behavior, those affidavits would precisely match the significance of the affidavits of "Terry Grant" and Shauna Henline to the instant case. Unless and until it is established that the moon really IS made of cheese, that significance is... nothing.

In short, the only actual facts in evidence are Defendants' affidavits, both those in the form of tax return instruments and those introduced with filings in this case, and the Plaintiff's own certificates of assessment. All of these facts fully support Defendants' position, and fully defeat that of Plaintiff. Plaintiff cannot prevail on the facts no matter how they are construed.

Further, Plaintiff cannot prevail as a matter of law. Plaintiff is incapable of proving that it has any claim to Defendants' property, and Defendants have positively established by every mechanism provided by law that Plaintiff has no such claim. Plaintiff has acknowledged by means of its own documents that it has no such claim. Additionally, if almost superfluously under the circumstances, the law provides that Plaintiff can only assess and collect per the declarations on Defendants' return. Even if Plaintiff could contrive a convincing pretense of a claim, it could not assess and collect it as a tax, in any event (a fact which underscores the fundamental jurisdictional illegitimacy of this suit).

Plaintiff also cannot prevail as a matter law in regard to its grotesque prayer for an injunction involving the dictation of the content of Defendants' tax return testimony by others, or so as to suit the preferences and interests of others. Not only would the resulting "testimony" be legally meaningless, but such an injunction would stand at odds with the statutes providing for the production and content of such returns (and possibly others as well, such as 18 USC § 1512(b)(1), which criminalizes any effort to use intimidation to influence the testimony of any person in any official proceeding, or which may eventually become a part of any official proceeding).

Finally, as previously observed, Plaintiff's motion is untimely. The Court has yet to rule on our motions to dismiss and for other relief, in light of which Plaintiff's motion seeks a judgment in a cause not yet verified as legitimate, and as to a complaint to which no answer has yet been made.

## WHEREFORE

Defendants pray this Honorable Court to:

1. Reject the Magistrate's Report and Recommendation regarding Plaintiff's Motion for Summary Judgment, and deny that motion;

2. Grant Defendants' Motion to Dismiss For Lack Of Jurisdiction and For Failure To State A Claim Upon Which Relief Can Be Granted; and

3. Grant Defendants such other relief, including the costs of this action, as is just and equitable.

Dated this, the 22nd day of February, 2007

Respectfully submitted

*(signature)*
Peter Eric Hendrickson

*(signature)*
Doreen M. Hendrickson
232 Oriole Rd.
Commerce Twp, Michigan 48382
(248) 366-6858

Attachment: Affidavit of Peter E. Hendrickson

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2007 a true and correct copy of the above and foregoing document was served on the Plaintiff as listed below by First Class Mail to:


Robert D. Metcalfe
Trial Attorney Tax Division
U.S. Department of Justice
P.O. Box 7238
Ben Franklin Station
Washington, DC 20044

and on Magistrate Judge R. Steven Whalen by First Class Mail to:


United States District Court
Eastern District of Michigan
Chambers of
R. Steven Whalen
Theodore Levin U.S. Courthouse
231 West Lafayette Blvd.
Detroit, Michigan 48226


_____
Peter Eric Hendrickson

**Affidavit**

I am Peter E. Hendrickson, a man born, and presently living, in Michigan; older than the age of majority; and of sound mind.

I have personal knowledge of the facts set forth in this affidavit and I am competent to testify about them.

Upon information and belief, Kim Halbrook, witness for the Plaintiff in the civil action styled "United States Of America versus Peter Eric Hendrickson and Doreen M. Hendrickson", has no personal knowledge whatsoever regarding payments reported on Forms W-2 about which she has testified by affidavit in the instant action, and is merely attesting to having seen records about those payments, and to the contents thereof.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 19th day of February, 2007.

_____
Peter E. Hendrickson